**In the Matter of Nathan DROOKER, Bankrupt.**

**No. 51–54.**

United States District Court, D. Massachusetts.

March 28, 1955.

Richard O. Aldrich, of Tyler & Reynolds, Boston, Mass., for General Motors Acceptance Corp.

W. J. Hession, Boston, Mass., referee.

Robert Robinson, of Widett & Kruger, Boston, Mass., for Irving Widett, trustee.

FORD, District Judge.

This case is before the court on a petition for the review of an order entered by a referee in bankruptcy denying a petition of the General Motors Acceptance Corporation for reclamation of an automobile. The referee has certified to the court his findings and rulings of law.

The question for decision is whether the conditional sale agreement here involved violates the provisions of Massachusetts G.L.(Ter.Ed.) Ch. 255, § 13A, as amended.[1]

On September 20, 1954, the referee held that the sales contract involved violated the provisions of Ch. 255, § 13A, denied the reclamation petition, and ordered the proceeds of the sale to be turned ed over to the trustee in bankruptcy. General Motors, on September 28, 1954, petitioned this court to review the referee's order, set it aside, and turn over to it the proceeds of this sale.

---

1. "Section 13A. *Provision Relative to Payments, etc., in Case of Repossession and Sale.*—No instrument evidencing a conditional sale of personal property shall be valid unless it contains a provision that, in case of repossession and sale of such personal property for default in payment of any part of the total time price, all sums paid on account of such price and any sum remaining from the proceeds of a sale of such repossessed personal property after deducting the reasonable expenses of such repossession and sale shall be applied in reduction of such price, and that, if the net proceeds of such sale exceed the balance due on such price, the sum remaining shall be paid to the vendee; provided, that this section shall not apply to an instrument evidencing a conditional sale of personal property affixed or attached to real estate in any other manner than by an electrical connection."

The pertinent parts of the sales contract in issue are as follows:

"1. Title to said property shall not pass to purchaser until said amount is fully paid in cash. No transfer, renewal, extension or assignment of this contract or any interest thereunder, or loss, injury or destruction of said property shall release purchaser from his obligation hereunder; assignee shall be entitled to all the rights of seller. Purchaser shall keep said property free of all taxes, liens and encumbrances; shall not use same illegally, improperly or for hire; shall not remove same from the state without permission of the holder of this contract; shall not transfer any interest in this contract or said property. Any sum of money paid by the seller in payment or discharge of taxes, liens and encumbrances on said property shall be secured by and under this contract.

\* \* \* \* \* \*

"3. Delinquency Charges—Time is of the essence of this contract. Any instalment or amount payable hereunder, if unpaid five (5) days after it becomes due, shall include interest thereon at the highest lawful contract rate from the due date. In the event that any instalment shall not have been paid within thirty (30) days after it becomes due and payable, the purchaser expressly acquiesces in the right of the holder of this contract to delegate a representative to endeavor in person to collect such unpaid instalment and, in acknowledgment thereof, the purchaser hereby agrees to pay a further charge in a sum equal to five per cent (5%) of such unpaid instalment, but such charge shall neither be less than one dollar nor exceed five dollars in any event. The purchaser agrees, in the event this contract is placed in the hands of an attorney for collection, to pay fifteen per cent (15%) of the amount due or such lesser sum as may be permitted by law, as attorney's fees.

"4. In the event purchaser defaults on any payment due on this contract or fails to comply with any condition of this contract or a proceeding in bankruptcy, receivership or insolvency be instituted against the purchaser or his property, the seller shall have the right, at his or its election, to declare the unpaid balance, together with any other amount for which the purchaser shall have become obligated hereunder, to be immediately due and payable. Further upon such default or event, seller or any sheriff or other officer of the law may take immediate possession of said property without demand (possession after default being unlawful), including any equipment or accessories thereto; and for this purpose seller may enter upon the premises where said property may be and remove same. Such repossession shall not affect seller's right, hereby confirmed, to retain all payments made prior thereto by the purchaser hereunder. Seller may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to purchaser (if given, notice by mail to address below being sufficient), with or without having such property at place of sale, and upon such terms and in such manner as seller may determine; seller may bid at any public sale. From proceeds of any such sale, seller shall deduct all reasonable expenses for retaking and selling such property including a reasonable attorney's fee. The balance thereof shall be applied to amount due; any surplus shall be paid over to purchaser; in case of deficiency purchaser shall pay the same with interest. Seller may take possession of any other property in the above described motor vehicle at time of repossession, wherever such

other property may be therein, and hold same temporarily for purchaser without liability on the part of seller."

The trustee's contentions are that the sales contract (a) does not contain the provisions required by § 13A of Ch. 255 and (b) contains other provisions that would nullfy the statutory provisions and purposes even if the language of the contract was construed as in substantial compliance with § 13A.

■ With Massachusetts law controlling, the trustee relies on Clark v. A. & J. Transportation Co., Inc., 330 Mass. 327, 113 N.E.2d 228 and Mogul v. Boston Acceptance Co., Inc., 328 Mass. 424, 104 N.E.2d 427. The referee cites both these cases in his memorandum and order and concludes they were controlling to support the position of the trustee.

The provisions of the contract questioned by the referee are as follows:

(1) "Such repossession shall not affect seller's right, hereby confirmed, to retain all payments made prior thereto by the purchaser hereunder."

(2) "From proceeds of any such sale, seller shall deduct all reasonable expenses for retaking and selling such property including a reasonable attorney's fee. The balance thereof shall be applied to *amount due*; * * *." (Emphasis mine.)

■ The referee concluded that within the principles laid down by Clark and Mogul, supra, these two provisions did not comply with the requirements of § 13A. The trustee argued, and the referee agreed, that the retention of payment provision made it possible for the vendor to retain all payments made by the vendee under all circumstances or situations and as § 13A provides not to apply them in reduction of the total time price. It is obvious the wording of the contract does not follow the exact statutory language of § 13A. However, this is not necessary. As Mogul states, 328 Mass. at page 426, 104 N.E.2d at page 428: "We do not go so far as to say that

there can be no change in the statutory words, but we do say that if different words are used they must be equally effective in every respect with those of the statute to accomplish the exact statutory purpose." Lehan v. North Main Street Garage, Inc., 312 Mass. 547, 550, 45 N.E.2d 945, 947, 144 A.L.R. 1100, sets forth the statutory purpose: "to insure the application of all payments to the purchase price of the article intended to be bought in the interest and for the protection of the conditional vendee."

■ This court does not agree with the trustee's contention and the referee's conclusion that the language in the contract does not insure the application of payments made by the vendee in the event of repossession and sale. There is no language in the contract that expressly provides that the vendor is to retain the payments made by the vendee under any and all circumstances. On the face of the contract, the vendee is given credit for his down payment. On the reverse side of the contract, in the paragraph concerning repossession on default, the seller has the right to declare the "unpaid balance" to be due. It would seem that the language of the contract, as a whole, reasonably compels the conclusion that the seller did not contemplate the retention in any event of payments made by the vendee. The court agrees with the petitioner that the clause in question was inserted to avoid the conclusion that the vendor by repossession and sale made an election and must return to the vendee all payments made.

We now come to a more difficult problem because of the obscurity in § 13A. The trustee contends and the referee holds that § 13A requires the vendor to use the "total time price" reflected in the contract as the base to which all payments must be applied. And the trustee argues under the phrase "amount due" in the provision: "The balance thereof shall be applied to *amount due*;" that the amount due may, under the terms of the contract, exceed the "Total Time Price". (Emphasis mine.) He contends,

under the provisions of the contract calling for a 15% attorney's fee for collection (or a 5% fee for a delegated representative) of unpaid installments, that these expenses might very well be includible in "amount due" and are not permissible deductions from the proceeds of the sale whether they be regarded as deductions from such proceeds or as an increase of the total time price.

It will be noted also there is a provision in the contract for a reasonable attorney's fee in the event of repossession and sale which deduction Judge Wyzanski decided was deductible. In re Seaboyer, D.C., 116 F.Supp. 780, aff. sub. nom. Millen v. General Motors Acceptance Corp., 1 Cir., 210 F.2d 654.

■ This brings us to the question as to what "total time price" in § 13A means to which payments must be applied.[2] Chapter 255 does not specify what items may be included in "total time price". However, it is apparent that insurance charges, finance charges, and delinquency charges are included. Ch. 255, § 12. Payments to discharge taxes, liens or encumbrances (see ¶ 1 of provisions of contract) though they could be expenses of repossession and sale, yet they might be incurred long before repossession and sale and not be expenses of repossession. There is no express provision in Ch. 255 to include these charges. However, these would be lawful charges. Also, nowhere is there any permission, either express or implied, in Ch. 255 to include payment of an attorney's fee of 15% of the amount due for collection, yet it would be a lawful charge though not, as has been stated, one incurred in repossession and sale.

The petitioner argues that the "amount due" in the contract requires a broader construction than the referee gives it; that it means the "unpaid balance" plus all lawful charges and expenses in accordance with the terms of the contract. Although the petitioner also takes the position that the "amount due" does not include the 15% attorney's fee (see ¶ 3 of provisions of contract), yet that position does not seem to be correct. A fair construction of the phrase "amount due" would be to the effect that the 15% fee for collection, if an attempt to make collection failed, could amount to a sizeable sum. Such a charge is permitted by the terms of the sales contract and could readily be included in the "amount due".

The petitioner further contends that even if the 15% attorney's fee for collection could be added as an increment to the "unpaid balance" or "amount due" or "Time (Deferred) Balance" (which of course supplants the "Total Time Price"), there is compliance with § 13A. Its position is that this would be a lawful charge, it is secured by the contract (¶ 3), and nothing in the statute forbids it.

As stated, the referee, in construing § 13A, concluded that lawful charges could not be paid from the proceeds of a sale either directly as a deduction, or indirectly as increments to the Time (Deferred) Balance, except those actually constituting expenses incurred in connection with repossession and sale. What are some of these "lawful charges" as provided by the contract? Money paid by the seller in payment or discharge of taxes, liens and encumbrances are provided for in ¶ 1 of the "Provisions" on the reverse side of the contract; insurance charges not set forth in the "Total Time Price" on the face of the contract; interest on overdue installments (¶ 3); delinquency charges; also the 15% attorney's fee for collection are contracted for. Certainly insurance charges, finance charges, and delinquency charges, which, of course, are not ascertainable on execution of the contract are in-

2. Under the contract here involved, upon default for any reason, the provision in § 13A with respect to the application of proceeds obtains. Under § 13A it applies only where there is default in payment of price. Petitioner's contract is more favorable than § 13A requires.

cludible. Ch. 255, §§ 12 and 13D. Yet the referee has construed § 13A as not allowing any charges not fixed and ascertainable at the execution of the contract to be included as fixed amounts in the breakdown of the "Total Time Price". Under the referee's rulings the lawful charges would constitute an unsecured balance due and require supererogatory circuity of action to make the vendor whole. It is difficult to believe the legislature intended this result.

Did the Massachusetts legislature intend that § 13A be given the narrow construction of the referee? It would not seem so from reading the provisions in the statute relating to "Conditional Sales". Ch. 255, §§ 11–13G. Section 11 is a provision requiring the vendee in default in order to redeem before sale to pay the vendor "the full amount then unpaid, with interest and all *lawful charges and expenses* due to the vendor." (Emphasis mine.) Cf. Thomas G. Jewett, Jr., Inc., v. Keystone Driller Co., 282 Mass. 469, 477, 185 N.E. 369, 87 A.L.R. 1298, storage charges. Section 13F provides, in the event of default in any of the terms of the contract and a public sale of the property, "Any sum remaining from the proceeds of such sale *after application to the indebtedness of the vendee* in accordance with the terms of the contract shall be paid to the vendee." (Emphasis mine.) Section 13 provides, with respect to receipts for payments on request of the vendee, that such receipts shall include the amount of the payment made and the balance due *on the contract*. There is no distinction here between "Total Time Price" and other lawful charges permitted by sales contracts. It is difficult to believe the Massachusetts legislature intended to reimburse the vendor in full for all lawful charges in the event of a redemption before sale as also in the event of repossession and a forced public sale and in § 13A provides that in the event of a sale after repossession by the vendor that the reimbursement to the vendor should exclude lawful charges and expenses except those constituting expenses incurred in connection with repossession and sale. I do not believe it did. Why the inconsistencies? I conclude that what the legislature in § 13A, as in §§ 11 and 13F, intended was to make the vendor whole in the event of a repossession and sale, as in the case of redemption and no sale and all lawful charges not ascertainable[3] at execution of the contract should be included in the "Total Time Price" which could not be included in the "Total Time Price" at the execution of the contract, because at that time they were unascertainable. Such a construction would reconcile §§ 11, 13A and 13F. After all, the conditional sales statute is primarily a disclosure statute designed to let the vendee know what he is in for and § 13A is designed to prevent any undisclosed charges which would not arise except after repossession and sale or in connection with such and, if charged, enable the vendor to keep a balance after sale under the guise of expenses of sale. Under the construction given § 13A here, the "Time (Deferred) Balance" would be increased by lawful charges and any credits, themselves unascertainable, later due the vendee, would reduce the "Time (Deferred) Balance". This would make the sales contract a "rational business instrument which will effectuate the apparent intention of the parties." Kagan v. Industrial Washing Machine Corp., 1 Cir., 182 F.2d 139, 142.

The sales contract here involved does not violate the provisions of § 13A and is valid.

The findings and order of the referee are overruled. Funds held by R. O. Aldrich, Esquire, from sale to be turned over to the petitioner.

---

3. There is an item (5.) on the face of the contract for unascertainable charges.